**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-03093-REB

FRANK J. FERNANDEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed November 27, 2012, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of a obesity, diabetes, sleep apnea, chronic obstructive pulmonary disease ("COPD"), cardiomyopathy, and foot pain associated with plantar fasciitis. After his application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge.

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

This hearing was held on July 29, 2011. At the time of the hearing, plaintiff was 44 years old. He has an eleventh grade education and past relevant work experience as a construction worker, lubrication technician, dishwasher, and electrical equipment assembler. He has not engaged in substantial gainful activity since February 10, 2010, the date of his application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform light work with postural and environmental limitations and which allowed for the use of supplemental oxygen during regular breaks and at lunch two times per day. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater***, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th

Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III.  LEGAL ANALYSIS

Plaintiff claims the ALJ's disability decision must be reversed because she failed to articulate good cause for discrediting the opinion of an examining source and because her residual functional capacity assessment is not supported by substantial evidence.  Finding no such reversible error in the ALJ's decision, I affirm.

At the request of plaintiff's representative, Dr. Velma Campbell examined plaintiff and reviewed his medical records on June 9, 2011.  She suggested that plaintiff could lift 10 pounds occasionally, could stand or walk up to two hours a day for 10 to 15 minutes at a time, and would need to elevate his legs for two hours per day.  She also suggested that plaintiff was further limited in the use of his upper extremities "for forceful grip or prolonged use of tools."  (Tr. 370, 371-372.)  Although the ALJ stated that she gave this opinion "little weight" in her formulation of plaintiff's residual functional capacity (Tr. 21), it appears clear that she adopted none of the limitations suggested by Dr. Campbell.

The ALJ gave three reasons for this determination.  First, she noted that Dr. Campbell had examined plaintiff at the request of plaintiff's attorney.  (Tr. 18.)   While this consideration does not merit outright rejection of a medical opinion, "[a]n ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel."  ***Hinton v. Massanari***, 13 Fed. Appx. 819, 823-24 (10th Cir. July 3, 2001).  The ALJ here noted that this reason was not sufficient per se to warrant rejection or limitation of Dr. Campbell's opinion, and, in fact, she did not discount that opinion on that basis alone.  (Tr. 21.)

Second, the ALJ suggested that "in the absence of any specific testing of the claimant's functionality per a functional capacity evaluation or other objective study," Dr. Campbell's opinions appeared largely based on an uncritical acceptance of plaintiff's subjective report of his own symptoms. (Tr. 21.) Although a medical opinion may not be rejected simply because it depends in part on the physician's assessment of the patient's subjective complaints, *see Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984), neither can a finding of impairment be based merely on the claimant's *ipse dixit*, **Bernal v. Bowen**, 851 F.2d 297, 300 (10th Cir. 1988).

Moreover, to the extent these reasons might be thought insupportable, the ALJ did not rely on them alone, but concluded further that Dr. Campbell's limitations were inconsistent with the medical and other evidence of record. (Tr. 21.) **See Rios v. Astrue**, 848 F.Supp.2d 1283, 1288 n.5 (D. Colo. 2012). Such inconsistency is a valid reason for discrediting a medical source statement. **See Frey v. Bowen**, 816 F.2d 508, 513 (10th Cir. 1987). The ALJ noted that plaintiff had received mostly routine and/or conservative treatment for his impairments, *see **Huston v. Bowen**, 838 F.2d 1125, 1132 (10th Cir. 1988), which were well-controlled on medications when he took them (Tr. 15), *see **Pacheco v. Sullivan**, 931 F.2d 695, 698 (10th Cir. 1991). She recounted substantial evidence supporting her conclusion that plaintiff often was not compliant with treatment recommendations. (Tr. 16-18.) She relied also on plaintiff's not-insubstantial activities of daily living, which she appropriately concluded were inconsistent with his claims of disability. (Tr. 15, 19.) **See Ouellette v. Apfel**, 2000 WL 1262642 at *13 (N.D. Cal. Aug. 24, 2000) (activities of daily living may be relevant "to the extent that the

level of activity is in fact inconsistent with the claimed limitations"). Therefore, contrary to plaintiff's argument, the ALJ's assessment was not based on the mere absence of evidence, but was well documented by specific citations to the record. (*See* Tr. 16-19.)

The evidence on which plaintiff relies to suggest otherwise consists of his own testimony and subjective complaints and records establishing that he has been diagnosed with and treated for various impairments. The ALJ found plaintiff's reports of pain and limitation to be less than credible and gave good reasons for that conclusion. (*See* Tr. 19-20.) *See White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001) (noting that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence" so long as linked to specific evidence in the record) (citation omitted). Contrary to plaintiff's argument, this determination is not mere boilerplate, but is well supported by the record, as recounted above. Plaintiff's allegedly contrary evidence, establishes only that he has been diagnosed with and treated for various impairments, which is insufficient to suggest that such impairments impose work-related limitations, much less disabling limitations. *See Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. July 18, 2007); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Moreover, to the extent this evidence might be construed to support a conclusion different from that reached by the ALJ, it was her province to resolve such conflicts in the evidence. *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988); *Gleason v. Apfel*, 1999 WL 714172 at *4 (D. Kan. Sept. 1, 1999). I therefore find no reversible error in this regard.

Plaintiff appears to be under the impression that Dr. Campbell's opinion should have been entitled to more weight because she was the only medical source to express an opinion in terms of functional limitations. In this, he miscomprehends the nature of the respective roles of medical sources and the ALJ in formulating the residual functional capacity assessment. The ALJ was under no obligation to base her residual functional capacity assessment on any particular medical source's opinion, "because the determination of residual functional capacity is not a medical opinion." **Moses v. Astrue**, 2012 WL 1326672 at *4 (D. Colo April 17, 2012). Instead, residual functional capacity is assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," **Noble v. Callahan**, 978 F.Supp. 980, 987 (D. Kan. 1997). Although the ALJ's determination must be grounded in some medical evidence, **see Anderson v. Shalala**, 51 F.3d 777, 779 (8th Cir. 1995), it is ultimately an administrative determination reserved to the Commissioner, 20 C.F.R. § 416.946; **Rutledge v. Apfel**, 230 F.3d 1172, 1175 (10th Cir. 2000).

The ALJ's thorough discussion of all the evidence of record plainly reveals that she did not fashion her residual functional capacity assessment out of whole cloth, as plaintiff suggests, but rather brought all relevant sources and considerations to bear in making her determination. For example, in concluding that plaintiff had the residual functional capacity to stand up to four hours a day, the ALJ appropriately reviewed the evidence of record and determined that plaintiff was capable of far greater physical activity than either he or Dr. Campbell indicated. This determination was based on the

conservative nature of plaintiff's treatment, the fact that he was often not compliant with treatment, his activities of daily living, and the fact that plaintiff had a sporadic work history prior to his alleged date of onset and stopped working not due to his impairments, but to care for his sick mother. (*See* Tr. 16-19.) Again, although it might be possible to reach a contrary conclusion if my review were *de novo*, that is not my role in the procedural posture of this case.

Relatedly, plaintiff faults the ALJ for failing to address Dr. Campell's opinion that plaintiff would need to elevate his legs two hours per day. Just as the ALJ is not bound by any particular source opinion as to a claimant's residual functional capacity, neither is she obligated to include in her assessment every limitation possibly suggested by a medical source. *See Jones v. Astrue*, 2008 WL 2325184 at *5 (E.D. Ky. June 4, 2008); *Powers v. Barnhart*, 2004 WL 2862170 at *4 (D. Me. Dec. 13, 2004). The ALJ here did not "cherry pick" only those parts of Dr. Campbell's opinion that supported her findings – she relied on none of the limitations suggested therein. As noted above, the ALJ gave sufficient, legitimate reasons specifically tied to the evidence of record for that determination. With respect particularly to plaintiff's allegations of foot pain, the ALJ noted that his treatment had been conservative (Tr. 18), and that no treating source had imposed limitations of any sort on plaintiff as a result of this, or any other, impairment (Tr. 20). Although it certainly would have been preferable for the ALJ to specifically mention that she rejected the suggestion that plaintiff required accommodation in this regard, I perceive no reversible error in that determination.

Finally, plaintiff claims the residual functional capacity assessment fails to adequately account for his need for supplemental oxygen during the day. Noting that plaintiff had received supplemental oxygen a mere two weeks before the hearing (Tr. 15, 38),[2] the ALJ nevertheless provided for the use of supplemental oxygen during regular breaks and at lunch two times per day for 15 minutes at a time (Tr. 14). There was no error in this regard. Plaintiff testified that he requires supplemental oxygen four of five times during the course of a 24-hour period. (Tr. 40.) Plaintiff presents nothing suggesting that this level of oxygen usage – approximately once every five to six hours – is incompatible with needing only two breaks in an eight-hour work day.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 10, 2014, at Denver, Colorado.

                                            **BY THE COURT:**

*/s/ Bob Blackburn*
Robert E. Blackburn
United States District Judge

---

[2] The ALJ also noted that plaintiff continued to smoke even after receiving supplemental oxygen. (Tr. 20, 39-40.)